UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAMELA J ANTOSH,
NED E LASHLEY,

           Plaintiffs,

v.                                         Case No. 22-cv-0117-bhl

VILLAGE OF MOUNT PLEASANT, et al.,

           Defendants.

## ORDER GRANTING MOTION TO DISMISS

      This is the second lawsuit Plaintiffs Pamela J. Antosh and Ned E. Lashley have filed challenging the Village of Mount Pleasant's use of its eminent domain power to acquire a parcel of their real property. They first filed suit in state court in December 2019, shortly after the Village took steps to condemn their property for highway changes associated with the much-publicized Foxconn development. In state court, Antosh and Lashley elected not to challenge the propriety of the taking itself but instead focused on the amount of compensation they were to receive. Two years into that litigation, however, they changed their minds. With their case on the brink of trial, the state court undercut their damages theory in a motion in limine ruling. Rather than addressing the correctness of that ruling in the state courts, Antosh and Lashley filed this action, now alleging for the first time that the taking was for an improper *private* purpose. The Village has moved to dismiss, arguing that this Court should either reject these latest claims on their merits or abstain from exercising jurisdiction to allow the long-pending state court action to run its course. (ECF Nos. 24 & 25.) For the reasons given below, the Court concludes that abstention is appropriate and will grant the Village's motion to dismiss.

### BACKGROUND[1]

      In July 2017, Taiwan-based electronics company Foxconn announced a plan to build its first American factory in Wisconsin. Three months later, the Village of Mount Pleasant emerged

---

[1] This Background is derived from the allegations in Antosh's amended complaint. (ECF No. 23.) Those allegations are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

as the winner of the bid process for the factory site. Local and national news extensively covered the development and its progress.[2]

In securing the bid, the Village agreed to acquire more than 2,800 acres of privately owned land for the new facility. (ECF No. 23 ¶2.) To accomplish this, the Village used a financing mechanism called a Tax Incremental Financing District (TID). (ECF No. 23-5 at 3.) Wisconsin law provides for the creation of TIDs through a state-legislature managed process that allows municipalities to finance expenses associated with private, tax-producing development. (*See id.*); Wis. Stat. § 66.1105 (2019–20). The legislation creating the TID must identify a specific purpose, and, if the TID is industrial, all the lands within the TID must be zoned as industrial. *See* Wis. Stat. § 66.1105(4)(gm)(4)(a). The Wisconsin legislature authorized the creation of the Foxconn TID in September 2017. (*See* ECF No. 23-5 at 2.) After this authorization, the Village rezoned properties around the site as "business park" properties. (*See id.*)

The size of the Foxconn development necessitated substantial improvements to the transportation and utility infrastructure in the project area. (*See id.* at 3.) Among other infrastructure efforts, the Village, Racine County, and the State of Wisconsin Department of Transportation agreed to expand and improve County Road KR and 90th Street. (*Id.* at 3–5.) The need for the expansion and re-routing of 90th Street impacted Antosh and Lashley, who owned a three-acre parcel at the corner of County Highway KR and 90th Street. (ECF No. 23 ¶¶3, 5.) As part of the re-routing, the Village utilized its direct condemnation powers under Wis. Stat. § 32.05. (*Id.* ¶14.) Consistent with Wisconsin law, on September 19, 2019, the Village provided Antosh and Lashley with a "jurisdictional offer," which explained that the Village "in good faith intends to use the above-described property for [a] public purpose." (*Id.* ¶12.) Two months later, on November 20, 2019, the Village awarded the Plaintiffs "damages" for the taking of their property, stating that the compensation was for "road purposes" described as the "improvement of CTH KR

---

[2] *See, e.g.*, Nelson D. Schwartz & Vindu Goel, *Foxconn Says It Plans to Build Factory in Wisconsin, Adding 3,000 Jobs*, N.Y. TIMES (July 26, 2017), https://www.nytimes.com/2017/07/26/business/foxconn-factory-wisconsin-jobs.html; Chris Isidore & Julia Horowitz, *Foxconn Got a Really Good Deal from Wisconsin. And It's Getting Better*, CNN BUS., (Dec. 28, 2017) https://money.cnn.com/2017/12/28/news/companies/foxconn-wisconsin-incentive-package/index.html; Danielle Paquette, Todd C. Frankel & Hamza Shaban, *Foxconn Announces New Factory in Wisconsin in Much-Needed Win for Trump and Scott Walker*, THE WASHINGTON POST, (July 26, 2017) https://www.washingtonpost.com/news/wonk/wp/2017/07/26/foxconn-to-announce-new-factory-in-wisconsin-in-much-needed-win-for-trump-and-scott-walker/; Patrick Marley & Jason Stein, *Foxconn Announces $10 Billion Investment in Wisconsin and up to 13,000 Jobs*, MILWAUKEE J. SENTINEL, (July 26, 2017) https://www.jsonline.com/story/news/2017/07/26/scott-walker-heads-d-c-trump-prepares-wisconsin-foxconn-announcement/512077001/.

in Racine County." (*Id.* ¶¶17–19; ECF No. 23-5 at 1.) Under Wisconsin law, the recording of this award served to transfer interest in Plaintiffs' property to the Village. (*See* ECF No. 23 ¶¶17–19.)

On December 4, 2019, Antosh and Lashley filed suit in Racine County Circuit Court. Invoking Wis. Stat. § 32.11, they sought greater compensation for the taking. (*Id.* ¶25; ECF No. 25 at 6.) They complained that while the Village had paid five to eight times the value of most properties it acquired for the Foxconn project, it had never offered Antosh and Lashley such multipliers for their land. (ECF No. 23 ¶6.) Antosh and Lashley did *not* contend that their property had improperly been taken for a private (as opposed to a public) use. Under Wisconsin law, they would have had to file such a "right to take" challenge within 40 days of their receipt of the jurisdictional offer, or no later than October 29, 2019. *See* Wis. Stat. § 32.05(5). Antosh and Lashley did not pursue such a challenge.

After two years of discovery and other proceedings, the case was finally ready for a February 1, 2022 trial date. (ECF No. 25 at 6.) In advance of trial, the Village filed motions in limine, asking for the exclusion of expert evidence or argument that the Antosh property would have a higher valuation if considered "business park" rather than "agricultural" property. (ECF Nos. 23-5 & 23-6 at 6.) The Court granted the Village's motion at a January 5, 2022 final pretrial conference, citing Wisconsin's Project Influence Rule, codified at Wis. Stat. § 32.09(5)(b). (*See* ECF No. 23-7 at 18.)

In response, on January 28, 2022, just four days before trial was to start, Antosh and Lashley filed this federal court suit. (ECF No. 1.) In federal court, they complained, for the first time, that the Village's taking of their property was an improper acquisition of private land for private use in violation of the Fifth Amendment. (ECF No. 23 ¶52.) Their complaint also alleges equal protection and substantive due process challenges under the Fourteenth Amendment. (*Id.* ¶¶54–55.)

The state court held a hearing on January 31, 2022 to discuss the impact of the federal filing on the state court case. (*See* ECF No. 26-2 at 3.) Plaintiffs' counsel argued that the court should adjourn the February 1 trial unless the Village agreed to waive all issue or claim preclusion arguments. (*Id.* at 4.) The state court ultimately agreed to stay the case, but only after expressing serious concern and frustration over Plaintiffs' litigation tactics. It characterized the federal court lawsuit as an effort to have the federal court "take a look at" the state court's motion in limine rulings, "essentially circumventing" the state court of appeals. (*Id.* at 5–6.) The court observed

that Plaintiffs' forum shopping threatened to render the state trial a "nullity" in disregard for the "efficient use of the judicial system [and] the judicial process here in Wisconsin." (*Id*. at 6.) Noting it was "not happy" that Plaintiffs were attempting what "looked like an end run of [its] decision," the court nevertheless agreed to stay the state court trial pending resolution of the federal lawsuit to avoid "a waste of [its] judicial time." (*Id.* at 11.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Roberts*, 817 F.3d at 564 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Roberts*, 817 F.3d at 564-65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Iqbal*, 556 U.S. at 678).

## ANALYSIS

The Village seeks dismissal of the Amended Complaint on the merits. It insists Plaintiffs' Fifth Amendment claim fails because Antosh and Lashley have waived any "private" purpose challenge by failing to raise the issue timely under state law and, waiver aside, the Antosh Property was taken for a highway improvement, a quintessential "public" purpose. (*See* ECF No. 25 at 13–14.) The Village further contends that the Fourteenth Amendment substantive due process and equal protection claims fail because there is nothing "conscience shocking" about taking a property for a road improvement, and neither Antosh nor Lashley is a member of any protected class. (*Id.* at 18–20.) While these arguments are compelling, the Court will not reach them; doing so would improperly intrude on the state court's handling of the takings arguments that have long been pending in that forum. Plaintiffs' attempt to initiate this federal court challenge to the Village's actions, with a new legal theory apparently waived in state court, only after losing an evidentiary ruling in the state forum, offends fundamental principles of equity, comity, and federalism that underly our parallel judicial systems. Accordingly, rather than enabling gamesmanship, the Court

will accept the Village's alternate argument for dismissal and abstain from proceeding with the case.

## I. The Village Bears a Heavy Burden in Seeking Abstention.

The decision to abstain should not be taken lightly. As the Supreme Court has emphasized, abstention "is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given them" that rests on "the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of the federal jurisdiction within the constitutionally permissible bounds." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 496 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817; *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, (*NOPSI*), 491 U.S. 350, 359 (1989)).

But "a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010). Abstention is required in a variety of situations where federal jurisdiction would improperly interfere with state court litigation. Where "denying a federal forum would clearly serve an important countervailing interest" like "considerations of proper constitutional adjudication," "regard for federal-state relations," or "wise judicial administration," abstention is justified. *Adkins*, 644 F.3d at 496-97 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).

The situations in which abstention is appropriate fall into four general categories named for the Supreme Court cases in which they originated: *Pullman*, *Burford*, *Younger*, and *Colorado River*.[3] *Pullman* abstention is typically applied in cases with unsettled questions of state law that could render deciding a federal constitutional question unnecessary. *Burford* abstention is invoked to avoid federal involvement when a federal court is asked to review a complicated issue of state law and federal involvement threatens to confuse rather than clarify state law. *Younger* abstention generally applies where there are ongoing state criminal proceedings and a federal lawsuit would interfere with those proceedings. Finally, *Colorado River* is cited where there are parallel state and federal lawsuits and exceptional circumstances warrant avoiding proceeding with cases in

---

[3] *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Younger v. Harris*, 401 U.S. 37 (1971); *Colorado River*, 424 U.S.

federal court. *See* 17A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 4241 (3d. ed. 2022).

The Seventh Circuit has cautioned against mindless application of these labels, directing courts to look instead to the underlying "animating force" supporting all of them. *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 525–26 (7th Cir. 2021). All four categories "implicate (in one way or another and to different degrees) underlying principles of equity, comity, and federalism foundational to our federal constitutional structure." *Id.* (quoting *J.B. v. Woodard,* 997 F.3d 714, 722 (7th Cir. 2021)). Accordingly, a court should focus on these fundamental principles in deciding whether the rare situation exists in which abstention is necessary.

## II. The Village's Invocation of *Younger* Abstention under *Ahrensfeld* is Problematic.

The Village primarily invokes *Younger* abstention based on a nearly fifty-year-old Seventh Circuit precedent: *Ahrensfeld v. Stephens*, 528 F.2d 193 (7th Cir. 1975). At first blush, this seems like an easy call. *Ahrensfeld* applied *Younger* to affirm a district court's decision to abstain in a substantially similar case, involving parallel state and federal court challenges to a municipality's exercise of its eminent domain power. But the legal landscape concerning both abstention and takings law has changed dramatically over the last half-century, bringing into question whether a straightforward application of *Ahrensfeld* remains appropriate.

In *Ahrensfeld*, the Village of Rosemont, Illinois (Rosemont) acquired property pursuant to its eminent domain power to construct an athletic and convocation center. *Id.* at 195. To do this, Rosemont instituted condemnation proceedings in state court against several property owners. *Id.* While those actions were pending, the property owners brought a Section 1983 lawsuit in federal court to stop Rosemont from proceeding, insisting it was violating their Fifth and Fourteenth Amendment rights. *Id.* The district court dismissed the case on grounds that Rosemont was a municipality and thus not a "person" for Section 1983 purposes.[4] *Id.* at 196. It also grounded its dismissal on "reasons of comity." *Id.* The Seventh Circuit affirmed on appeal, citing *Younger* and invoking the "principles of equity, comity, and federalism [that] lie at the heart of the judge-made doctrine of abstention." *Id.* The Court of Appeals highlighted the need to respect the ability of state courts to dispose of litigation in an orderly and comprehensive fashion, particularly in relation to state law eminent domain procedures. *Id*. at 198. Accordingly, even though the plaintiffs

---

[4] This analysis preceded by four years the Supreme Court's ruling in *Monell v. Department of Social Services*, 436 U.S. 658 (1978) that municipalities were indeed "persons" for purposes of Section 1983.

asserted federal constitutional claims in the federal lawsuit, abstention remained appropriate given the "sensitive nature" of the state's eminent domain scheme and the need for federal courts to presume that their state court brethren could consider and resolve any federal constitutional claims properly raised in the state court. *Id.* at 198–99.

The *Ahrensfeld* analysis was bolstered ten years later by the Supreme Court's holding in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). Relying on many of the same cases cited in *Ahrensfeld*, the Supreme Court in *Williamson* held that federal courts were precluded from adjudicating Fifth Amendment takings cases until after a property owner had availed himself of state court systems to try to obtain just compensation. *Id*. If the law surrounding *Younger* abstention and takings claims under *Williamson* had held fast over the last thirty-five years, this Court's task would be easy. Abstention would clearly be required. But the legal foundations in both areas have shifted, bringing into question the Village's reliance on *Ahrensfeld.*

As an initial matter, the scope of *Younger* abstention has narrowed significantly since *Ahrensfeld*, and particularly so in the last decade. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) ("Circumstances fitting within the *Younger* doctrine, we have stressed, are 'exceptional.'") (citing *NOPSI*, 491 U.S. at 367–68). Courts now emphasize that *Younger* abstention is only warranted in three types of cases: "where federal jurisdiction would intrude into ongoing state criminal proceedings, or into certain civil enforcement proceedings (judicial or administrative) akin to criminal prosecutions, or into civil proceedings 'that implicate a State's interest in enforcing the orders and judgments of its courts.'" *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 815 (7th Cir. 2014) (quoting *Sprint*, 571 U.S. at 72–73). Outside of these specific situations, federal courts are not to abstain under *Younger* even if there is a risk of duplicitous, parallel litigation in state and federal proceedings. *Id.* at 816. While the Seventh Circuit has cautioned against wooden application of the various categories of abstention, it has also clearly identified the limited situations in which *Younger* abstention is allowed, and none are present here.

Second, and perhaps more significantly, in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), the Supreme Court dramatically revised takings law and the division between federal and state courts in deciding takings challenges. *Knick* expressly overruled *Williamson* and makes clear that property owners experiencing a taking need not wait and avail themselves of state court

compensation remedies before filing suit in federal court. *Id.* at 2167. The Supreme Court explained that requiring a federal takings plaintiff to pursue state law compensation remedies put the property owner in an improper Catch-22 given the potential for issue and claim preclusion. By precluding federal adjudication until the property owner went first to state court, the property owner risked having his claim barred simply as a result of losing in state court. *Id.* (citing *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323 (2005)). The Court rejected this "preclusion trap" as relegating the Fifth Amendment to a separate, lesser realm than other constitutional rights vindicated through Section 1983. *See id.* Accordingly, the Court held that a property owner has an actionable Fifth Amendment claim immediately upon a taking regardless of whether the owner has pursued his claims in state court first. *Id.* at 2168.

Given the substantial narrowing of *Younger* abstention and the Supreme Court's confirmation in *Knick* that federal takings proceedings can proceed even with state remedies available and not yet completed, the Court is reluctant to accept the Village's invitation to abstain based on *Younger* and *Ahrensfeld*. But the extraordinary circumstances of this case nevertheless cry out for abstention. Accordingly, mindful of the Seventh Circuit's caution against pedantic application of the various abstention doctrines and, given the remarkable circumstances in which Plaintiffs chose to undercut the state court's resolution of their own previously filed state court lawsuit, the Court will abstain based on the rationale of *Colorado River*.

### III. The Long-Pending State Court Lawsuit and the Exceptional Circumstances Leading to Plaintiff's Federal Court Claims Require Abstention Under *Colorado River*.

Abstention under *Colorado River* is appropriate where there are parallel state and federal proceedings and "exceptional circumstances" require the federal court to abstain to promote "wise judicial administration." 424 U.S. at 818. In such a situation, abstention conserves judicial resources, avoids duplicative litigation and the risk of conflicting rulings, and "promote[s] a comprehensive disposition of the parties' dispute in a single judicial forum." *Valcq*, 16 F.4th at 526 (citing *Colorado River*, 424 U.S. at 818). In the Seventh Circuit, application of *Colorado River* is a two-step inquiry. First, the Court must ask "whether the concurrent state and federal actions are actually parallel." *Id.* (quoting *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 952 F.3d 469, 477 (7th Cir. 2020)). But this alone is not enough. The Court must also determine "'whether the necessary exceptional circumstances exist to support' abstention." *Id.* (quoting *DePuy*, 952 F.3d at 477). Because both requirements are met and, more fundamentally, because doing so will

vindicate the interests of equity, comity, and federalism, all of which have been undermined by Plaintiffs' litigation tactics, the Court will abstain.

The record confirms that the Plaintiffs have brought parallel state and federal lawsuits over the same issues. Suits are considered parallel "when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *DePuy*, 953 F.3d at 477–78 (quoting *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004)). Perfect symmetry between cases is unnecessary. Rather, where both cases will be resolved using the same evidence and the same legal standard, it becomes "nearly certain" that state litigation will dispose of the federal case, suggesting abstention is appropriate. *See Valcq*, 16 F.4th at 526 (citing *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 647 (7th Cir. 2011)); *DePuy*, 953 F.3d at 478 ("The two lawsuits in our case are parallel, by…any…definition we can imagine. They involve the same parties, the same facts, and the same issues.").

Here, the cases are parallel. Plaintiffs' federal suit contains exactly the same parties as their state suit, with the addition of two new defendants, the Village's development authority and Village president, David De Groot, the inclusion of whom matters little if any to the issues in dispute. (*Compare* ECF No. 23 *with* ECF No. 23-6.) The basic facts and issues are also the same. Both cases concern the process by which the Village used its eminent domain power to take the Antosh property for road improvements related to the Foxconn development. Plaintiffs seek different remedies in this Court, but that is solely the result of their litigation choices. Plaintiffs elected to forgo a challenge to the legitimacy of the taking in state court, focusing instead on the compensation due, only to change course when an evidentiary ruling went against them. In federal court, Plaintiffs seek a ruling that the taking violated both the Fifth and Fourteenth Amendments, as well as damages. Defendants claim Plaintiffs have long ago waived such challenges in state court, but that conclusion depends on an interpretation of state law, specifically Wis. Stat. Section 32.05(5). Neither party has given the state court the chance to address that issue, and this Court is reluctant to interfere in a state law matter. In sum, the state and federal suits are symmetrical in "all the ways that matter under *Colorado River*."[5] *Valcq*, 16 F.4th at 526.

---

[5] The different remedies sought raise another complication. Plaintiffs have not explained how this Court could grant them a remedy for their "private purpose" claim, the exclusive remedy for which is the return of their property. *See Kelo v. City of New London*, 545 U.S. 469, 477 (2005). Plaintiffs' delay in raising their private purpose argument has made this impossible as the expanded roadway has already been built on Plaintiffs' land.

The remarkable events leading to Plaintiffs' last-minute resort to federal court also satisfy the second "exceptional circumstances" requirement in the *Colorado River* framework. For more than two years, Antosh and Lashley were content to litigate their takings challenge in state court utilizing state procedures without complaint. They elected to forgo and may have forfeited their right to challenge the public purpose of the taking in state court, focusing instead on monetary compensation. Then, after two years of proceedings, Plaintiffs lost an evidentiary ruling and, only then, decided to pursue a new federal court challenge. This lawsuit is thus little more than a tardy, tactical effort to get a "do-over" over on their takings challenge to avoid a ruling they do not like without taking the steps necessary to appeal. This is utter gamesmanship. As the state court observed in staying its case, Plaintiffs' litigation tactics show tremendous disrespect for the state court system. Allowing this gambit to proceed would fly in the face of the interests of equity, comity and federalism at the heart of the abstention doctrines.

The Seventh Circuit has identified ten non-exhaustive and unweighted factors for use in determining whether exceptional circumstances exist. *See Valcq*, 16 F.4th at 526 (citing *DePuy*, 953 F.3d at 477). These factors are intended to be merely illustrative. They are "helpful, not a straightjacket." *Id.* at 526–27 (quoting *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 647 (7th Cir. 2021) ("This list…is primarily helpful as a heuristic aid….Different considerations may be more pertinent to some cases, and one or more of these factors will be irrelevant in other cases.")). A district court may thus consider other special characteristics of the case before it too. *Id.* at 527 (quoting *DePuy*, 953 F.3d at 477). This case hits a number of them.

Both cases are about property rights, pure and simple. At Plaintiffs' own request, the state court has been exercising jurisdiction over issues relating to those rights for a full two years and was ready to proceed to trial when Plaintiffs decided to try a new approach in a new forum to avoid a ruling they did not like. (Factors 1, 4 & 7.) Requiring Plaintiffs to continue on the state-court path they initially chose will avoid piecemeal litigation, while affording them adequate protection for their federal rights. (Factors 3 & 6.) And it will not countenance Plaintiffs' gamesmanship, an effort that disrespected the state trial court, its extensive handling of the first-filed case, and the Wisconsin appellate courts, which should be deciding the correctness of the trial court's rulings.

Nor is this Court persuaded by Plaintiffs' counsel's *remarkable* claim that this federal lawsuit arises not from any dissatisfaction with the state court's motion in limine ruling, but rather because Plaintiffs only just learned that they might have an actionable "private purpose" takings

claim. (ECF No. 27 at 2–3.) This assertion is patently absurd. The Foxconn development in the Village of Mt. Pleasant was widely publicized, receiving extensive coverage in the local, state, and national media. (*See supra* note 2.) Counsel's suggestion at oral argument that he was "shocked" to discover that the taking of this property related to Foxconn when motions in limine were filed is impossible to accept at face value. It was never a secret that the road improvement that led to the taking of the Antosh property was intended to facilitate public access to the private Foxconn development. Indeed, counsel simultaneously admitted at argument that he considered, but decided against, joining Antosh and Lashley to another, prior, federal suit challenging the Foxconn development on private purpose grounds. *See Jensen v. Vill. of Mount Pleasant*, No. 18-C-0046, 2018 WL 2063181 (E.D. Wis. May 2, 2018). And the record confirms that Plaintiffs have spent two years arguing in state court that they should be entitled to greater compensation similar to other property owners whose land was condemned *for purpose of the Foxconn development*. (*See* ECF No. 23 ¶6.) These facts lay bare that this suit is a thinly veiled attempt to change horses midstream following an unfavorable motion in limine ruling.

The extraordinary circumstances surrounding this case and fundamental principles of federalism necessitate abstention in this case pursuant to *Colorado River*. As such, the Court will abstain and dismiss the case without prejudice.

## CONCLUSION

For the reasons given above,

**IT IS HEREBY ORDERED** that the Village's motion to dismiss, ECF No. 24, is **GRANTED without prejudice**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 10, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge